# In the United States Court of Federal Claims

## No. 20-119C
### Filed: August 7, 2020

```
* * * * * * * * * * * * * *    *
LEE HOLLAND JR.,                *
                                *
                Plaintiff,      *
                                *
        v.                      *
                                *
                                *
                                *
UNITED STATES,                  *
                                *
                Defendant.      *
                                *
* * * * * * * * * * * * * *    *
```

**Pro Se Plaintiff; Military Pay; Motion to Dismiss; Subject Matter Jurisdiction; Statute of Limitations; Tort; Conspiracy; Americans with Disabilities Act.**

**Lee Holland, Jr.**, pro se, Livingston, TX.

**Joshua A. Mandlebaum**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Steven J. Gillingham**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch and **Ethan P. Davis**, Acting Assistant Attorney General, Civil Division.

# O P I N I O N

**HORN, J.**

Pro se plaintiff, Lee Holland, Jr., a former Dental Technician, Chief Petty Officer in the United States Navy, filed the above-captioned complaint in the United States Court of Federal Claims, on April 28, 2020, seeking review of an August 27, 2019 decision by the Board for Correction of Naval Records (BCNR) and to recover monetary relief. Plaintiff also seeks reappointment as an officer in the Navy Medical Service Corps (MSC), effective February 25, 1975, and incremental promotions to O-5 (Commander) or O-6 (Captain) as of July 1990. Plaintiff "further requests $2,900,000, for reasonable rank advancement wages; $1,300,000, for a loss of social 'prestige' opportunities and experience; and, $129,239.80, for administrative efforts, attorney fees and court costs." Alternatively, plaintiff requests whatever amount the court finds to be just and reasonable. Defendant has moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) (2019) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction.

**FINDINGS OF FACT**

Plaintiff served in the Navy from his enlistment on May 11, 1961 until his retirement on July 1, 1990. Plaintiff was the subject of a medical board in 1966 for "Reiter's syndrome (conjunctivitis, urethritis and arthritis)," after which he was placed on limited duty for five months, before returning to full duty. Plaintiff completed an Associate of Science Degree under the Navy's Associate Degree Program in 1971 and was then assigned to the medical/dental clinic in Long Beach, California. According to the appendix attached to the defendant's motion to dismiss, in January 1974, plaintiff applied for an appointment as an officer in the Medical Services corps (MSC). In the spring of 1974, plaintiff began to experience pain in his joints and swelling in both of his knees and right wrist and was hospitalized at the Naval Regional Medical Center in Long Beach, California on May 14, 1974. On May 29, 1974, plaintiff received written notice that he had been selected for appointment in the Medical Corps as an Ensign and that his date of rank would be August 1, 1974. While plaintiff was hospitalized, however, he received a diagnosis of rheumatoid arthritis and a medical examiner determined that he was unfit for full duty, and due to the determination that he was unfit for full duty, plaintiff's appointment documents were not issued.

Plaintiff was referred by a Medical Examination Board (MEB) to a Physical Evaluation Board (PEB) on October 23, 1974. Due to the findings of the PEB, plaintiff was transferred to the Temporary Disability Retirement List (TDRL) on February 26, 1975 at his previous pay grade of E-6 (as opposed to the "promotional-grade of Ensign 0-1)." Plaintiff was removed from the TDRL on October 1, 1980 and reenlisted on October 2, 1980. During plaintiff's time on the TDRL he attended law school. After reenlisting, plaintiff unsuccessfully applied for a commission in the Judge Advocate General's Corps (JAG Corps).[1] Following plaintiff's reenlistment, he served on active duty until he was transferred to the Fleet Reserve on February 28, 1989 and then to the retired list on July 1, 1990.

According to the appendix filed with defendant's motion to dismiss, plaintiff has petitioned the United States Navy Board for the Correction of Naval Records (BCNR) three times, receiving partial or full denials on September 8, 1975, July 22, 1983, and August 27, 2019. Plaintiff first petitioned the BCNR in 1975 and sought to have a negative performance evaluation removed from his military record, which was denied on September 8, 1975. In plaintiff's second petition to the BCNR, the subject of an opinion issued on July 13, 1983, he successfully requested the removal of the same negative performance evaluation that was the focus of his 1975 petition, along with related administrative entries (two Enlisted Performance Record entries, an Administrative Remarks entry, a letter from his commanding officer, and a letter from the Navy Recruiting

---

[1] Information about the rank that plaintiff held when he re-enlisted is not available in the record before this court. There is also a slight inconsistency between the two BCNR documents on the record, with the July 13, 1983, opinion stating that plaintiff unsuccessfully applied for a JAG Corps commission upon his return to active duty and the August 27, 2019, letter noting that plaintiff returned to active duty after not being selected for the JAG Corps.

Command). Plaintiff, however, was unsuccessful with his request for "reinstating his appointment" to the MSC effective August 1, 1974 with a transfer effected to the JAG Corps as of May 1, 1980. In the 1983 petition, plaintiff asserted "that he should not have been denied his appointment to the MSC" and that "the contested material reflecting adversely on his performance nor his physical disability constituted a valid basis for the withholding of the appointment" to the Medical Corps. (capitalization in original). On July 22, 1983, the BCNR removed the negative performance evaluation report and related material from plaintiff's naval record, finding that plaintiff had not received an opportunity to comment on those items and that the special evaluation report was "defective on its face." The remainder of plaintiff's request, to have his record corrected by reinstating his appointment as an ensign in the MSC and then to be transferred to the JAG Corps effective May 1, 1980, however, was denied. The BCNR found that plaintiff's "physical disability constituted a valid basis for denying his appointment to the MSC." Furthermore, with regard to plaintiff's assertion under the Bureau of Naval Personnel Manual that a member of TDRL is entitled to the temporary grade to which he or she would have been promoted if not for the physical disability found as a result of a physical examination for promotion, the BCNR found that the Bureau of Naval Personnel Manual was not applicable, as "an original appointment as an officer does not equate to a promotion." Additionally, the BCNR was unable to determine if plaintiff would have been appointed to the JAG Corps "but for the unfavorable material whose removal the Board recommends" and further noted that "the Board considers it generally inappropriate as a matter of policy to usurp the discretion of the service in determining who should be offered commissioned status."

In 2018, approximately twenty-eight years after plaintiff's retirement from the Navy, and forty-three years after he first sought relief from the BCNR, Mr. Holland began the process of seeking relief from the BCNR for a third time. Although the application was "not filed in a timely manner," the BCNR waived the statute of limitations and considered the case on its merits "in the interest of justice." Plaintiff requested that his appointment be restored to February 25, 1975 and to receive incremental grade advancements to the rank of O-5 (Commander) or O-6 (Captain) as of July 1990. After a three member panel considered plaintiff's application on April 30, 2019, the BCNR issued a letter on August 27, 2019, denying plaintiff's request, finding that he did not meet the qualifications to receive his appointment "due to not being physically qualified." The BCNR also found that he was never eligible for any officer advancements due to his never having been commissioned. In the absence of new matters for reconsideration that could be presented to or considered by the BCNR, plaintiff was advised that his only recourse would be to seek relief from a court of appropriate jurisdiction.

On October 3, 2019, plaintiff filed for review of the BCNR's August 27, 2019 decision to the United States Court of Appeals for the Federal Circuit. On January 29, 2020, the Federal Circuit transferred the case to this court. The Federal Circuit explained:

> We are a court of limited subject matter jurisdiction and do not have the authority to review appeals directly from the BCNR. *See* 28 U.S.C. § 1295. However, appeals from the BCNR may be taken to the United States Court of Federal Claims, which may order correction of military records "as an

incident of and collateral to" an award of monetary damages from the United States, such as actions for back pay pursuant to the Tucker Act and the Military Pay Act. *See* 28 U.S.C. § 1491(a)(1), (2); 37 U.S.C. § 204. We have authority to transfer a case to the Claims Court pursuant to 28 U.S.C. § 1631. Although the United States contends in its response that it would not be appropriate to do so here because Mr. Holland's claim is time-barred under 28 U.S.C. § 2501, we deem it more appropriate to transfer for the Claims Court to address that argument.

Holland v. United States, No. 2020-1028 (Fed. Cir. Jan. 29, 2020) (emphasis in original).

Section 1631 of Title 28 of the United States Code provides that if the court in which a civil action is filed finds a lack of jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . . in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631 (2018). Even if the parties do not request a transfer, the court is still permitted to order a transfer without being asked to do so. See Brown v. United States, 74 Fed. Cl. 546, 550 (2006) (citing Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1375 (Fed. Cir. 2005)).

In this court, defendant moved to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction because plaintiff's claims fall outside the six-year statute of limitations set forth in 28 U.S.C. § 2501 (2018), and, therefore, are time-barred. Defendant argues that the latest possible date when plaintiff's claims could have begun to accrue is the date of his retirement on July 1, 1990, and that any claims would have needed to be brought within six years of that date. Furthermore, defendant also argues that plaintiff's recent appeal to the BCNR is not relevant in regard to determining when the claim accrued.

In response, plaintiff argues that there is no "elapse of time statute" in a "conspiracy," and points to his correspondence with the late Senator Alan Cranston regarding "financial irregularities and malfeasance" in his command. In plaintiff's opposition to defendant's motion to dismiss, filed on June 10, 2020, he argues that the Americans with Disabilities Act (ADA) supports the return of his promotion and also alleges that the original decision to not grant his commission was a due process violation. Furthermore, plaintiff encourages this court to look into his performance evaluations over the last ten years of his service, which the BCNR did not have in its "possession," for proof that he was carrying out legal duties and of his high moral character that is contrary to the claims of the "conspirators" that he alleges took away his commission. In response to these claims, defendant notes that the ADA and Due Process Clauses of the United States Constitution do not support jurisdiction before this court, as they are not money-mandating, and therefore, do not constitute a cause of action under the Tucker Act, 28 U.S.C. § 1491. Additionally, defendant points out that any claims involving a conspiracy are allegations of a crime or a tort, both of which are outside this court's jurisdiction. Furthermore, defendant also argues that plaintiff demonstrated that he knew of the facts underlying his claim several decades ago, as is demonstrated by his earlier petition to the BCNR in 1983, and reiterates its argument that plaintiff's claim is time-barred.

**DISCUSSION**

As noted above, in this case, defendant has moved to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1). First, the court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), appeal docketed; Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Secretary, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of [] jurisdictional requirement[s] and set a different rule for pro se litigants only."); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 136 S. Ct. 1737,

1745 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007); Fanelli v. United States, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless

entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation- does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).'"); see also Me. Community Health Options v. United States, 140 S. Ct. 1308, 1327-28 (2020). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation." (citing Cabral v. United States, 317 F. App'x 979, 981 (Fed. Cir. 2008))); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006)).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2020); Fed. R. Civ. P. 8(a)(1), (2) (2020); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Although the Tucker Act waives federal sovereign immunity in certain cases, and grants this court jurisdiction to hear monetary claims against the government, including military pay claims, this court's jurisdiction is expressly limited by 28 U.S.C. § 2501, which prescribes a six-year statute of limitations for claims arising under the Tucker Act's waiver of sovereign immunity. According to 28 U.S.C. § 2501:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . . A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008); Schnell v. United States, 115 Fed. Cl. 102, 104-5 (2014). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues ""when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money."" San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1358-59 (Fed. Cir.) (quoting Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004))), reh'g en banc

denied (Fed. Cir. 2011); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Martinez v. United States, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), motion denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)) (emphasis in original); Mildenberger v. United States, 643 F.3d 938, 944-45 (Fed. Cir. 2011); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); see also Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 481 (2013); Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied, 133 S. Ct. 1645 (2013); see also Levy v. United States, 83 Fed. Cl. 67, 73, 79 (2008) (dismissing a claim for military reserve retirement benefits because suits against the United States are subject to a six-year statute of limitations and the claim was filed outside the allotted timeframe); Barney v. United States, 57 Fed. Cl. 76, 83, 86 (2003) (dismissing former Airman's claims for wrongful discharge/unpaid wages and disability retirement because they were time-barred by the six-year statute of limitations). A Judge of the United States Court of Federal Claims has noted that:

> It is well-established that a claim accrues under section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)); see also Samish [Indian Nation v. United States], 419 F.3d [1355,] 1369 [(2005)]. Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.), cert. denied, 526 U.S. 1117 (1999); see also John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

Parkwood Assocs. Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813-14 (2011), aff'd, 465 F. App'x 952 (Fed. Cir. 2012); see also Mgmt. & Training Corp. v. United States, 137 Fed. Cl. 780, 783 (2018); Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 209 (2011) (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)).

Accrual of a claim is "'determined under an objective standard" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)). Plaintiff does not need to be aware of all relevant facts for a cause of action to accrue, the statute of limitations begins running once they are aware of sufficient facts to know that they have been wronged. See Osborn v. United States, 47 Fed. Cl. 224, 233 (2000). In the context of veterans challenging failures to receive promotions during their active

service, retirement is the latest date upon which their claims can accrue. See Tolar v. United States, 140 Fed. Cl. 659, 661 (2018). Furthermore, appeals to the relevant correction board are not taken into account for determining when a claim accrued. See Martinez v. United States, 333 F.3d at 1304.

Defendant asserts that this court does not have subject matter jurisdiction to consider plaintiff's complaint because his claims are time-barred and defendant argues that plaintiff's claims began to accrue, at the very latest, upon his retirement from the Navy on July 1, 1990. Defendant argues that because plaintiff did not file his complaint until 2019 (initially in the United States Court of Appeals for the Federal Circuit), it is time-barred. Plaintiff responds that he was the victim of a conspiracy that makes the statute of limitations inapplicable. Plaintiff applied to the Medical Corps in 1974 and was placed on the TDRL in 1975 at the rank of E-6. Plaintiff alleges the conspiracy, which, according to plaintiff, prevented him from receiving his commission, occurred during this same time period. Plaintiff also applied to the JAG Corps, to which he also requests a retroactive transfer, following his return to active duty in 1980. Plaintiff does not claim that he only now or recently became aware of the relevant facts, illustrated by the framing of his complaint as correcting an injustice "after more than forty years" and his previous applications to the BCNR. The dates referenced by plaintiff in his complaint clearly place the filing of plaintiff's current complaint beyond the six-year statute of limitations, making the allegations raised in his current complaint time-barred.

Moreover, plaintiff's most recent appeal to the BCNR is not relevant for determining if his recently filed complaint now before this court is timely. As the BCNR noted in reaching its decision following plaintiff's 2018 petition, the complaint had not been filed in a timely manner, but the BCNR had chosen to waive the statute of limitations and consider the case on its merits "in the interest of justice." That the BCNR's most recent consideration of plaintiff's petition occurred within the past six years, does not toll the original six-year statute of limitations and has no impact on how to determine when the claim accrued. See Martinez v. United States, 333 F.3d at 1304-05 ("Accordingly, the failure to seek relief from a correction board not only does not prevent the plaintiff from suing immediately, but also does not prevent the cause of action from accruing."). Reconsiderations by the BCNR after lengthy periods of time do not deprive prior BCNR decisions of their finality for statute of limitations purposes, even when they bring in material not presented to the board when making the prior decision. See Van Allen v. United States, 70 Fed. Cl. 57, 63-64 (2006) (holding that statute of limitations began to run after first BCNR opinion in 1986 and not after reconsideration opinion was issued in 1995). As plaintiff's 2018 appeal to the BCNR does not change the date of when plaintiff's claims accrued, the date of plaintiff's retirement from the armed forces on July 1, 1990, represents the final date that his claims against the government for failure to promote began to accrue, which is over thirty years ago and far outside of the applicable six-year statute of limitations. Despite plaintiff's commendable number of years of service, the statute of limitations, nonetheless, precludes jurisdiction in this court.

Additionally, although the government does not raise the issue in its motion to dismiss or in its reply to the motion to dismiss, plaintiff's claims for retroactive promotion are personnel decisions which should be treated by courts with deference. The United

States Supreme Court noted in a suit seeking judicial review of duty assignments that "orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." Orloff v. Willoughby, 345 U.S. 83, 94 (1953); see also Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995) (noting that the merits of decisions committed to military discretion, including promotions, are not subject to judicial review). The jurisdiction courts have is over cases of procedural error. See Voge v. United States, 842 F.2d 776, 780-81 (Fed. Cir. 1988). To state such a claim of procedural error, the plaintiff must point to a nexus between that procedural error and the adverse promotion decision. Tolar v. United States, 140 Fed. Cl. at 661 (citing Lindsay v. United States, 295 F.3d 1252, 1259 (Fed. Cir. 2002)). Plaintiff has not identified such a nexus between a procedural error and not receiving his commission or promotions, as the claims of a conspiracy regarding irregularities in his command lack documentation and support in the record before the court.

Plaintiff's allegations of a conspiracy within his command that allegedly took away or prevented his commission not only are undocumented in the record before this court, but if plaintiff is alleging a criminal conspiracy, those claims also are not within the jurisdiction of this court. To the extent that plaintiff may be asserting claims of a criminal conspiracy, this court lacks subject matter jurisdiction to adjudicate such claims. The jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Flippin v. United States, 146 Fed. Cl. 179 (2019) ("Such conduct is criminal in nature and beyond the subject-matter jurisdiction of this court."); Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) ("[T]his court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts." (internal citation omitted)); Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); Fullard v. United States, 78 Fed. Cl. 294, 301 (2007) ("[P]laintiff alleges criminal fraud, a subject matter over which this court lacks jurisdiction." (citing 28 U.S.C. § 1491; Joshua v. United States, 17 F.3d at 379)); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006) (finding that the United States Court of Federal Claims lacked jurisdiction to consider plaintiff's criminal claims), appeal dismissed, 236 F. App'x 615, reh'g denied, (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Matthews v. United States, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), recons. denied, 73 Fed. Cl. 524 (2006). Thus, plaintiff's criminal claims also fail.

Plaintiff also claims that his commission was taken away from him in violation of his due process rights. The United States Court of Appeals for the Federal Circuit has held that this court does not have jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (concluding that the United States Court of Federal Claims has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments (citing LeBlanc v. United

States, 50 F.3d at 1028)); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir. 2006) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Vondrake v. United States, 141 Fed. Cl. 599, 602 (citing Smith v. United States, 709 F.3d at 1116), aff'd sub nom., 729 F. App'x 916 (Fed. Cir. 2019); Weir v. United States, 141 Fed. Cl. 169, 177 (2018); Maehr v. United States, 139 Fed. Cl. 1, 3-4 (2018) (stating that Smith v. United States, 709 F.3d at 1114, "remains controlling law today"), aff'd, 767 F. App'x 914 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 49 (2019); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (citing LeBlanc v. United States, 50 F.3d at 1028); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 565 U.S. 1153 (2012). Due process claims "must be heard in District Court." Kam-Almaz v. United States, 96 Fed. Cl. at 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012). Therefore, this court does not have jurisdiction to review plaintiff's claim.

Plaintiff further asserts that the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., "should encourage" the return of his promotion. This court, however, lacks subject matter jurisdiction over plaintiff's ADA claims. To demonstrate that the Tucker Act provides jurisdiction over claims between a claimant and the government, the claimant must prove that the particular provision of law relied upon is money-mandating. See, e.g., United States v. Navajo Nation, 556 U.S. at 290; Ontario Power Generation, Inc. v. United States, 369 F.3d at 1301. The ADA, however, is not a money-mandating law. See Dziekonski v. United States, 120 Fed. Cl. 806, 809-10 (2015) (noting that the ADA is not a money-mandating provision that would provide the United States Court of Federal Claims with jurisdiction) (citation omitted); Shipman v. United States, 118 Fed. Cl. 701, 707 (2014) ("[T]he court does not have subject matter jurisdiction over claims alleging a violation of the Americans with Disabilities Act of 1990 ('ADA'), 42 U.S.C. § 12101 et seq., because the ADA is not a money-mandating source of law.") (internal quotation marks and citation omitted). Moreover, the United States District Courts possess exclusive jurisdiction over ADA claims. See, e.g., McCauley v. United States, 38 Fed. Cl. 250, 266 (1997) (citing 42 U.S.C. § 12117(a)) (finding the district courts had exclusive jurisdiction over claims brought under the ADA), aff'd, 152 F.3d 948 (Fed. Cir. 1998). Thus, this court is not the proper forum to seek judicial relief under the ADA. See

12

id.; see Maclin v. United States, 121 Fed. Cl. 66, 67-68 (2015) ("Further, Plaintiff's complaints of violations of the ADA are also outside the Court's jurisdiction as federal district courts have exclusive jurisdiction over ADA claims."); Johnson v. United States, 97 Fed. Cl. 560, 564 (2011) ("The Court notes that Federal district courts have exclusive jurisdiction over the ADA and Rehabilitation Act claims."); Searles v. United States, 88 Fed. Cl. 801, 805 (2009) ("Indeed, the ADA does not apply to the federal government as an employer and district courts hold exclusive jurisdiction over ADA claims."). Therefore, this court does not have jurisdiction over plaintiff's ADA claims.

## CONCLUSION

For the reasons stated above, this court lacks jurisdiction to hear plaintiff's claims, and plaintiff's claims must be dismissed. Defendant's motion to dismiss plaintiff's complaint is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**